INAVEST ENTERPRISES, Respondent, v TRW TITLE INSURANCE OF NEW YORK, INC., Appellant.

Third Department, March 25, 1993

### APPEARANCES OF COUNSEL

*Farley, Jutkowitz, Balint & Wiederkehr,* New York City *(Andrew J. Balint* of counsel), for appellant.

*Terrence Ryan,* Suffern, for respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

On December 9, 1988 plaintiff, a partnership, entered into a written contract to purchase real property in the Village of Spring Valley, Rockland County. The purchase was to be "SUBJECT to any outstanding taxes due and payable on said premises included *[sic]* but not limited to the 1987/1988 School Taxes and the 1988 State, County and Town Tax". In a rider to the contract, plaintiff acknowledged that there were outstanding taxes and agreed to pay all arrears, including penalties and interest. After signing the agreement, plaintiff ordered title insurance from defendant and subsequently received a certificate and report of title, dated January 1, 1989, which included a tax search. Only 1988-1989 school taxes and 1989 State, county and town taxes were shown on the report; although there were in fact outstanding taxes for 1987-1988, as noted in the contract, defendant admittedly overlooked these earlier taxes.

Plaintiff received title to the property and paid the 1988-1989 taxes listed in the report, and on February 17, 1989 defendant issued a policy of title insurance covering the property. The policy contained no specific exception for unpaid taxes; it did, however, generally exclude from coverage "[j]udgments against the insured or estates, interests, defects, objections, liens or encumbrances created, suffered, assumed or agreed to, by or with the privity of the insured".

Thereafter, plaintiff was notified of the unpaid taxes for 1987-1988 and, after having paid $8,012.74 in satisfaction thereof, brought this action to recover that amount from defendant under the title policy. Following joinder of issue, defendant moved for summary judgment and plaintiff cross-moved for summary judgment. Supreme Court granted defendant's motion with respect to plaintiff's second cause of action,

which alleged negligence in performance of the title search, but denied the motion as to the first cause of action, which sounded in breach of contract. Holding that there was a factual question as to "whether plaintiff knew about the arrears in issue and the amount thereof at the time the contract was made", the court ordered a hearing on the matter of plaintiff's knowledge. Defendant moved to reargue on the ground that plaintiff knew of the tax lien; the motion was granted and, on reargument, Supreme Court adhered to its original decision. Defendant appeals from so much of the judgment as denied its motion to dismiss the first cause of action.

The complaint should be dismissed in its entirety. Although plaintiff may not have known of the existence of actual tax liability for the year in dispute, it nonetheless affirmatively and in no uncertain terms undertook to bear the risk of such liability should it surface. In the rider to the purchase agreement, plaintiff unequivocally acknowledged that there were outstanding taxes due and owing—including specifically the 1987-1988 school taxes and 1988 State, county, and town taxes —and agreed to pay all arrears (compare, First Natl. Bank & Trust Co. v New York Tit. Ins. Co., 171 Misc 854, 857-859). Thus, there can be no question that plaintiff agreed to assume, as part of its contractual deal, the risk of liability such as that for which it now seeks to be indemnified.

Given the admittedly low price paid for the property, described by one of plaintiff's principals—one or more of whom were real estate brokers buying for their own account—as a "steal", there can be little doubt that the risk of outstanding tax liability contributed to this favorable price. Such a "bargained for" encumbrance or risk is not a "defect" in the title insured against and for which coverage is provided, but rather a liability voluntarily assumed by plaintiff which fits squarely within the language of the policy exclusion as a "lien * * * assumed or agreed to, by * * * the insured" (see, supra, at 858). The cases of Glickman v Home Tit. Guar. Co. (8 Misc 2d 303) and Empire Dev. Co. v Title Guar. & Trust Co. (225 NY 53), relied upon by plaintiff, do not militate against this conclusion, for in neither of those cases—unlike the title insurance policy at hand—does it appear that the policy specifically excepted liens which were assumed or agreed to by the insured.

Furthermore, inasmuch as the purchase agreement itself put plaintiff on notice as to the risk of outstanding taxes from

1988, and that risk was accepted by plaintiff without further assurances, no showing can be made that plaintiff relied upon defendant's title search to apprise it of the existence of such arrears. Thus, the insurer is entitled to be relieved of liability as a matter of law *(see, Lawyers Tit. Ins. Corp. v Research Loan & Inv. Corp.,* 361 F2d 764, 769). To hold otherwise requires disregarding or impermissibly altering the obligations of the parties which were clearly and unambiguously set forth in the policy *(see, Schiff Assocs. v Flack,* 51 NY2d 692, 699).

WEISS, P. J., MIKOLL, MERCURE and CREW III, JJ., concur.

Ordered that the interlocutory judgment is modified, on the law, with costs to defendant, by reversing so much thereof as partially denied defendant's motion for summary judgment; motion granted with regard to plaintiff's first cause of action, summary judgment awarded to defendant and said cause of action dismissed; and, as so modified, affirmed.