55 So.2d 196

JEFFERSON COUNTY v. CITY OF BIRMINGHAM.

6 Div. 276.

Supreme Court of Alabama.

Oct. 4, 1951.

Rehearing Denied Nov. 23, 1951.

John S. Foster and Maurice F. Bishop, Birmingham, for appellant.

Mayer U. Newfield, Birmingham, for appellee.

BROWN, Justice.

This is an appeal from a final decree of the circuit court in equity denying the contentions of Jefferson County, a body corporate, that it had a right to construct a 40 million gallon per day activated sludge

type sewage treatment plant within a B Residence District established by a comprehensive zoning ordinance adopted prior to 1944 and embodied in the Code of the City of Birmingham adopted and promulgated in 1944 of which the courts take judicial notice.

Section 1602 of the General City Code provides:

"In a 'B' residence district, land may be used and buildings or structures may be erected, altered or used, only for the following uses:

"(1) Any use permitted in an 'A' residence district.

"(2) Two-family dwelling.

"(3) Multiple dwelling.

"(4) Hotel or apartment hotel.

"(5) Hospital, other than a hospital for persons suffering from insanity or from diseases such as are commonly isolated in a separate building.

"(6) Public or semi-public institution, educational or charitable (not including a jail, reformatory or other correctional institution).

"(7) Fraternity house, sorority house or dormitory.

"(8) Clubhouse, (not including a club, the chief activity of which is a service customarily carried on as a business).

"(9) Lodging house or boarding house.

"(10) Electric substation without rotary machinery or gas regulating station.

"(11) Accessory uses, incident to any of the principal uses above listed and not involving the conduct of a business."

Accessory uses within the meaning of subsection (11) of § 1602 of the General City Code of the City of Birmingham above set forth as defined by § 1603 of the General City Code of the City of Birmingham are as follows:

"In either an 'A' or 'B' residence district, accessory uses shall be:

"(1) Uses customarily incident to the principal uses listed as permitted. They shall be understood to include, among other things, an office such as that of a physician, dentist, musician, artist or other professional person, when located within or directly attached to his dwelling, which is used primarily as a dwelling, and home occupations such as dressmaking or millinery, engaged in by persons of the immediate family within their own dwellings.

"(2) Quarters for servants employed on the premises. Such quarters may be located either within the principal dwelling or in a separate building on the same lot and not less than sixty feet from the front lot line.

"(3) Private garage, located not less than sixty feet from the front lot line, if a separate building, or in a suitable room within or attached to the dwelling.

"(4) Private stable, located not less than eighty feet from the front lot line.

"(5) A sign or signboard not exceeding eight square feet in area, appertaining to the lease or sale of the premises.

"(6) A name plate not exceeding two square feet in area.

"(7) A sign or bulletin board, not exceeding twelve square feet in area, so placed as not to interfere with front yard requirements nor obstruct the view across the corner of intersection streets, and erected upon the premises of a church or similar institution for the purpose of displaying the name and activities thereof or the services therein provided.

"(8) A fence, hedge or enclosure wall; provided, that:

"(a) a solid fence or wall shall not exceed a height of six and one-half feet; and a hedge, solid fence or wall in the front yard, of a corner lot shall not exceed a height of three feet.

"(b) an ornamental fence exceeding six and one-half feet in height shall have a ratio or solid portion to open portion not in excess of one to four.

"(c) no fence, fence wall or fence hedge situated upon any portion of any lot or lot line between any front building line established by this chapter and the line of the street to the front thereof, shall exceed a height of four feet."

The proceedings were instituted by Jefferson County in the circuit court in equity by petition which alleges:

"The complainant claims and contends that said Section 1602 of the General City Code of the City of Birmingham does not prohibit, or apply to, or would not prohibit or apply to, the proposed sewage disposal plant. The complainant so contends for the separate and several reasons as follows:

"(1) The construction and operation of the proposed sewage disposal plant, being for the purpose of disposing of sewage from dwellings, is an accessory use, permitted and authorized by and under Subsection (11) of said Section 1602 and by and under Subsection (1) of Section 1603 of the General City Code of the City of Birmingham (herein above set out) * *."

The petition further alleges:

"(2) In constructing and operating the proposed sewage disposal plant, the complainant would be engaged in a governmental function; and said Section 1602 of the General City Code does not apply to buildings or structures constructed or operated by the complainant County in its governmental capacity, or when it is engaged in a governmental function.

"(3) If said Section 1602 of the General City Code of the City of Birmingham be construed to apply to a sewage disposal plant constructed or operated by the complainant County pursuant to Amendment LXXIII of the Constitution of Alabama of 1901, then said Section 1602 is unconstitutional and void, as being in conflict with, and in violation of, said Amendment LXXIII."

The petitioner, appellant, also contends that if the zoning ordinance is construed to prohibit the location, construction and operation of said sewage disposal plant within said B Residential District, it violates the provisions of Act No. 619, Acts of 1949, p. 954 et seq., Code 1940, Tit. 62, § 303 (203a) et seq., and is, therefore, unconstitutional and void.

The petition alleges that the complainant does not now own the site and in order to construct and operate upon the site selected said proposed sewage disposal plant, it would be necessary that complainant acquire the site by purchase or condemnation (as to which no steps have been taken); that the acquisition of such a site will entail the expenditure of large sums of public funds and in the event the complainant should acquire the site and it should then be held that said Section 1602 of the General City Code of the City of Birmingham applies to and prohibits the construction and operation of a sewage disposal plant on the site, there would result an enormous loss to the public as a consequence of the complainant County not being permitted to use the site for that purpose.

The petition prays that upon final hearing the court will render a declaratory judgment holding, ordering, adjudging and decreeing that Section 1602 of the General City Code of the City of Birmingham does not apply to or prohibit, and would not apply to or prohibit, the construction and erection by the complainant of the proposed sewage disposal plant upon the land bounded on the West by Avenue F, Pratt City, on the East by Avenue I, Pratt City, on the South by Village Creek, and on the North by Eighth Street, Pratt City.

The petition also prays for an injunction enjoining the City of Birmingham, prohibiting, restraining and enjoining the said City of Birmingham, its officers, agents and employees, from applying, or attempting to apply, or enforcing or attempting to enforce, said Section 1602 of the General City Code of the City of Birmingham as against the complainant, Jefferson County, Alabama, or its officers, contractors, servants, agents or employees with respect to the construction or operation of the sewage disposal plant upon the land described above.

The defendant, City of Birmingham, filed an answer admitting certain averments of the petition, numbered 1, 2, 3 and part of 4 and avers that the "determination by the County Commission that the selected site is 'the most practicable and economical site for the construction of said sewage disposal plant' was erroneous, wrong and based upon an inadequate consideration of, or a failure to consider, factors vital and

relevant to such determination" and sets up the provisions of the ordinance embodied in Section 1643 creating a Board of Adjustment empowered to hear and determine appeals from orders requiring determination made by the administrative officers in the enforcement of the City's Zoning Ordinance and sets up the provisions of the zoning ordinance in denial of complainant's contention that the City may select and construct such disposal plant in a B Residential District.

The only interest which the petition shows that the appellant has in said site is that its engineers have considered five (5) different sites upon which it has been suggested that such disposal plant be constructed, all of which were excluded, and the engineering department determined that the site embraced in the territory described was the most feasible and economical for the construction and maintenance of such plant.

The case was submitted for final decree on the allegations of the petition, the allegations of the answer and the report of the engineering department. The answer alleges that the area covered by said description consists of 35 acres of land on which approximately 98 families, whose homes would be taken to provide a site for said project, including other persons occupying property immediately contiguous to said site, and that the complainant has not given adequate consideration to these matters, nor does the petition make parties interested in said homes parties to the petition.

After due consideration of the provisions of Section LXXIII of the Constitution, Code of 1940, Tit. 1–6, Cum. Pocket Part, p. 78, and the provisions of Act No. 619, Acts 1949, p. 954, we find nothing that trenches on the power of the City of Birmingham or the ordinance of said city embodied in the comprehensive zoning law or the ordinance involved and embodied in §§ 1602 and 1603 of the General City Code, establishing B Residential Districts and prohibiting, in legal effect, the location of the project proposed by the County of Jefferson as a sewage disposal plant therein. Therefore we are of opinion and hold that the contentions of appellant that said zoning ordinance violates said constitutional provision and said act are without merit.

Section 654, Title 62, Code of 1940, confers on the City of Birmingham the full measure of the state's police power to provide for the safety, preserve the health, promote the prosperity, improve the morals, orders, comforts and convenience of the inhabitants of the city and prevent and punish injuries and offenses to the public therein. City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140.

We further observe that §§ 710, 711 and 712, Title 62, Code of 1940, make full provision for the enforcement of said zoning ordinance. Under the authority conferred by the statutes cited supra and § 772, Title 37, Code of 1940, the city is exercising a governmental power—the police power—for the protection of the public welfare. Therefore the contention that the County of Jefferson may ignore the zoning ordinance and construct and maintain said sewage disposal plant in a residential zone because it, too, is exercising a governmental power, is without merit. Walls v. City of Guntersville, 253 Ala. 480, 45 So. 2d 468. The only limitation placed upon the power of municipalities to pass zoning ordinances is that such ordinances must be comprehensive in scope and purpose and not in conflict with the laws of the state or the state and federal constitutions.

As pointed out above, all parties whose interest may be affected by the construction of the proposed disposal plant are not made parties. Code of 1940, Tit. 7, § 166. However, inasmuch as the decree only disposes of the contention made by the County of Jefferson and affirms the validity of the zoning ordinance, we feel that the best way to dispose of this appeal is to affirm the decree of the circuit court as it only affects the interest of the county (appellant here), who is clearly not entitled to the relief which it seeks. The following authorities support and sustain the conclusion stated in the court's final decree and in the foregoing opinion. Bryan v. Mayor, etc.,

of City of Birmingham, 154 Ala. 447, 45 So. 922, 129 Am.St.Rep. 63; Spear v. Ward, 199 Ala. 105, 74 So. 27; White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84; Rose v. City of Andalusia, 249 Ala. 333, 31 So.2d 66; Hickman v. City of Mobile, Ala.Sup., 53 So.2d 752; State ex rel. Wilkinson et al. v. Lane, 181 Ala. 646, 653–654, 62 So. 31, 32; 62 C.J.S., Municipal Corporations, § 228 (2), page 565.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

On Rehearing

PER CURIAM.

In Jones v. Jefferson County, 206 Ala. 13, 89 So. 174, and Hamilton v. Jefferson County, 209 Ala. 517, 96 So. 628, it was held that in operating a sewage disposal plant the county was engaged in a governmental function. We are taken to task because in the present case we did not give effect to the statement contained in Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So.2d 593, that the prohibitions and restrictions of a zoning ordinance do not ordinarily apply where the operation is in a governmental capacity.

The statement that the prohibitions and restrictions of a zoning ordinance do not ordinarily apply by its own language recognizes that there can be valid exceptions to the rule. While in the foregoing Alabama cases it was held that operation of a sewage disposal plant is a governmental function, those cases were dealing with questions of tort liability and not zoning. Cases in other jurisdictions hold that where zoning is involved, the operation of a sewage disposal plant is proprietary and not governmental. O'Brien v. Town of Greenburgh, 239 App.Div. 555, 268 N.Y.S. 173. In Alabama Alcoholic Beverage Control Board v. City of Birmingham, supra, it was explained that the legislature could with reason provide that a liquor store might be included within a zoning ordinance because in such establishment beverages are placed on sale and sold to customers as in other stores and from the standpoint of zoning, such an operation could well be regarded as business within a statute which authorized a city to be divided into business, industrial and residential zones. We refer to this difference in the authorities because it well shows that the general rule referred to above can have valid exceptions. Under the circumstances in this case the exception clearly applies. The city under its zoning power conferred by statute can prohibit the construction and operation of a sewage disposal plant, with all that that operation implies, from being located in a "B" residential district. Davis v. City of Mobile, 245 Ala. 80, 16 So.2d 1; Zoning Law and Practice by Dr. Yokley, Chap. II, §§ 15–25; 37 Am.Juris. §§ 276–279; Ex parte Byrd, 84 Ala. 17, 4 So. 397, 5 Am.Rep. 328.

Application for rehearing overruled.

LIVINGSTON, C. J., and BROWN, LAWSON and STAKELY, JJ., concur.