John Brent Peebles and certain other residents of the Town of Mooresville sued the Town of Mooresville, the Mooresville Town Council, and the individual members of the Town Council and the mayor (the individual members and the mayor are hereinafter referred to as "the Town officers") (all the defendants are collectively referred to as "the Town defendants") alleging that a zoning ordinance enacted by the Town officers was invalid. The trial court entered a summary judgment in favor of the Town defendants, [1] and Peebles *Page 390 
and the other opposing residents appeal. We affirm.
 I.
The Town of Mooresville is both one of the oldest and one of the smallest municipalities in Alabama. Located in southeast Limestone County, Mooresville is approximately 1/4 square mile in size and has approximately 60 residents. In 1991, the Town officers voted to adopt Mooresville's first comprehensive zoning ordinance ("the 1991 ordinance"). A group of residents subsequently challenged the 1991 ordinance in court and, in 2000, this Court declared the ordinance invalid because the Town Council had adopted it without providing the public notice required by law. See Ex parte Bedingfield,782 So.2d 290 (Ala. 2000).
On June 21, 2002, the Town Council gave notice that it would consider the adoption of a new comprehensive zoning ordinance at a meeting on July 9, 2002. John Brent Peebles and Withers G. Peebles III, members of the group of Mooresville residents who had successfully challenged the 1991 ordinance, promptly sued the Town defendants in the Limestone Circuit Court, seeking an injunction enjoining the Town officers from voting on the adoption of the proposed ordinance because, the Peebleses argued, the Town officers all owned land in the town and had a special financial interest in the proposed ordinance. The trial court took no action on the complaint; however, the Town Council held no vote on the proposed ordinance at that time.
On March 11, 2003, the Town Council did enact a new zoning ordinance ("the 2003 ordinance"). On September 3, 2004, the Peebleses, now joined by additional residents of Mooresville who also objected to the zoning plan (hereinafter referred to as "the Peebles group"), filed an amendment to their earlier complaint, arguing that the 2003 ordinance was invalid: (1) because of Mooresville's small size; (2) because the Town officials who had voted to adopt the ordinance had a special financial interest in the ordinance; and (3) because the Town Council had again failed to give the required public notice before adopting the ordinance.
On July 12, 2005, the Town Council gave notice that it was considering the adoption of yet another zoning ordinance. The Peebles group petitioned the trial court considering its earlier action to enjoin the Town officers from voting on the proposed ordinance because of their alleged special financial interest, and the trial court again declined to take any action. The Peebles group also amended its complaint to assert federal claims alleging violations of the Takings Clause and the Due Process Clause of the United States Constitution.[2]
On August 23, 2005, in order to cure possible notice defects associated with the enactment of the 2003 ordinance, the Town Council repealed the 2003 ordinance and enacted a new, identical ordinance ("the 2005 ordinance") by a 5-0 vote in compliance with the notice requirements. The Peebles group thereafter amended its complaint to reflect the adoption of the 2005 ordinance and also to add the argument that the 2005 ordinance was improper because it had been recommended by a zoning commission as opposed to a municipal planning commission. *Page 391 
In January 2006, the trial court dismissed the "Mooresville Town Council" as a defendant, although the individual council members remained in the case. Also in January 2006, the remaining Town defendants (hereinafter referred to as "the Town defendants") filed their first motion for a summary judgment; however, on the motion of the Peebles group, that summary-judgment motion was subsequently stricken for failure to comply with Rule 56(c)(1), Ala. R. Civ. P., which requires a summary-judgment motion to be accompanied by a narrative summary of the undisputed material facts.
On March 3, 2006, the Town defendants filed a properly supported renewed motion for a summary judgment. On June 6, 2006, before the trial court took any action on their March 3 motion, the Town defendants filed another summary-judgment motion. On June 15, 2006, the trial court set a hearing on the Town defendants' summary-judgment motions for August 23, 2006.
On August 21, 2006, the Peebles group filed its motion in opposition to the Town defendants' summary-judgment motion, along with its own motion for a summary judgment. On August 22, 2006 — one day before the scheduled hearing — the Town defendants filed a reply to the Peebles group's motion opposing their summary-judgment motion. At the hearing on August 23, the Peebles group objected to the reply brief filed by the Town defendants the previous day because it had not been served at least 10 days before the hearing, in violation of Rule 56(c)(2), Ala. R. Civ. P., which states that "[t]he motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing. . . ." The trial court took no action in response to the Peebles group's objection and, on September 6, 2006, granted the Town defendants' motion for a summary judgment and entered a final judgment in their favor.
On October 6, 2006, the Peebles group moved the trial court to vacate the judgment pursuant to Rule 59, Ala. R. Civ. P. The Peebles group also requested a hearing on its motion; however, the motion was denied on October 10, 2006, without a hearing being held. On November 16, 2006, the Peebles group filed this appeal.
 II.
The Peebles group raises six issues on appeal. The Peebles group first argues that the trial court erred in dismissing the "Mooresville Town Council" as a named defendant, presumably on the basis that the Town Council was not a legal entity separate from the Town of Mooresville with the capacity to be sued in its own name. The Peebles group states that the Town Council was named as a defendant when the 1991 ordinance was challenged and that neither the Court of Civil Appeals in Bedingfieldv. Mooresville Town Council, 782 So.2d 284
(Ala.Civ.App. 1999), nor this Court in Ex parteBedingfield, objected to the inclusion of the Town Council as a defendant. Thus, the Peebles group argues, the Town Council should remain as a defendant in the instant action.
We initially note that there is no indication in eitherBedingfield or Ex parte Bedingfield that the naming of the Town Council as a defendant was an issue there. Thus, the fact that neither the Court of Civil Appeals nor this Court raised that issue in the appeal relating to the 1991 ordinance cannot be considered an endorsement that the naming of the Town Council as a defendant was proper. However, regardless of whether the Town Council ultimately is a legal entity with the capacity to sue and be sued, we affirm the trial court's dismissal of the Town Council *Page 392 
as a defendant because the Peebles group has not cited any authority in support of its argument on this point. "`Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant.'" Spradlin v. BirminghamAirport Auth., 613 So.2d 347, 348 (Ala. 1993) (quotingSea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212,216 (Ala. 1990)).
 III.
The Peebles group next raises two procedural challenges to the judgment entered by the trial court, arguing that the court erred by holding a hearing on the Town defendants' summary-judgment motion only one day after the Town defendants filed a reply brief, and that, after entering a judgment in favor of the Town defendants, the trial court erred again by failing to hold a hearing on the Peebles group's postjudgment motion to vacate that judgment. The Town defendants do not take the position on appeal that the trial court did not err; instead, they argue that neither failure by the trial court merits a reversal of the judgment entered. We agree that no reversible error occurred.[3]
Rule 56(c)(2) states that "[t]he motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing. . . ." Even if the hearing, held by the trial court a mere one day after the Town defendants served additional "supporting materials," i.e., the reply brief, violated the 10-day notice requirement of Rule 56(c)(2), the Peebles group has not shown that it was prejudiced by the trial court's action. As this Court stated in Hilliard v. SouthTrust Bankof Alabama, N.A., 581 So.2d 826, 828 (Ala. 1991):
 "Once a party shows noncompliance with the notice requirement, the party then must show that the trial court abused its discretion by failing to comply with that requirement. To demonstrate an abuse of discretion, the party need only come forth with any showing that the denial of the full 10-day notice period worked to his prejudice. Kelly [v. Harrison, 547 So.2d 443, 445 (Ala. 1989)]."
The Peebles group claims that it was prejudiced in that it was unable to study and to respond to the brief served the day before the hearing; however, it has failed to identify exactly how its inability to study the brief prejudiced it, and this Court sees no evidence of such prejudice. As the Town defendants emphasize, their last summary-judgment motion, supporting brief, and, most importantly, the evidence supporting that motion, were all filed more than twomonths before the hearing. The Peebles group has identified no new arguments or evidence presented in the Town defendants' reply brief, and in the absence of new arguments or evidence, this Court is not inclined to find prejudice. Thus, the Peebles group has not shown that this is a valid basis for reversing the trial court's judgment.
The Peebles group also argues that the trial court erred to reversal by failing to hold a hearing on the Peebles group's postjudgment motion to vacate the judgment entered in favor of the Town defendants. This Court previously discussed *Page 393 
this issue in Historic Blakely Authority v.Williams, 675 So.2d 350, 352 (Ala. 1995), stating:
 "The [plaintiff] also argues that the trial court erred to reversal in not ruling on its motion to orally argue the new trial motion. Rule 59(g), Ala. R. Civ. P., does provide that a postjudgment motion `shall not be ruled upon until the parties have had opportunity to be heard thereon.' This Court has established, however, that the denial of a post-judgment motion without a hearing thereon is harmless error, where (1) there is . . . no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court. Greene v. Thompson, 554 So.2d 376 (Ala. 1989)."
Thus, although the trial court may have erred by not holding a hearing on the Peebles group's postjudgment motion, such an error does not automatically necessitate a reversal. Indeed, we hold that, in the present case, any error on the part of the trial court in not holding a hearing on the Peebles group's postjudgment motion was harmless.
In its postjudgment motion, the Peebles group essentially argued: (1) that there was a genuine issue of material fact as to whether the 2005 ordinance was valid because of Mooresville's small size; (2) that there was a genuine issue of material fact as to whether the 2005 ordinance was valid because, they asserted, the Town officers who voted to adopt the ordinance had a special financial interest in it; (3) that the trial court erred to reversal by holding the summary-judgment hearing one day after the Town defendants had filed a brief in support of their motion; and (4) that the trial court, in its final judgment, erred by taxing costs to the Peebles group. The Peebles group repeats these arguments to this Court on appeal and, as discussed herein, each of these arguments is without merit. Thus, because "the appellate court [has] resolve[d] the issues presented [in the Peebles group's postjudgment motion], as a matter of law, adversely to the [Peebles group], by application of the same objective standard of review as that applied in the trial court," the trial court's error in failing to hold a hearing on the postjudgment motion was harmless. Historic Blakely Authority,675 So.2d at 352.
 IV.
We next consider the Peebles group's substantive arguments, beginning with its argument that it is unreasonable and arbitrary for a municipality the size of Mooresville to enact a comprehensive zoning ordinance. The Peebles group asserts that nowhere in the United States has a municipality as small as Mooresville attempted to enact and administer a comprehensive zoning ordinance and that, among other things, it would be impossible for such a municipality to do so fairly and equitably.[4] They accordingly urge this Court to declare the 2005 ordinance invalid. See City of Gadsden v. Downs,412 So.2d 267, 269 (Ala. 1982) (stating that a court may overturn a zoning ordinance if it finds the action of the municipality in enacting the ordinance to be "arbitrary and capricious").
The Peebles group recognizes that § 11-52-70, Ala. Code 1975, appears to explicitly authorize every incorporated municipality *Page 394 
in Alabama — regardless of its size — to exercise the zoning power. Section 11-52-70 provides:
 "Each municipal corporation in the State of Alabama may divide the territory within its corporate limits into business, industrial and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as necessary to carry into effect and make effective the provisions of this article."
The Peebles group, however, argues that this section must be read in pari materia with § 11-41-1, Ala. Code 1975, which requires a community to have at least 300 residents before it may be incorporated. When these two statutes are read together, the Peebles group argues, the combined effect is to restrict the exercise of zoning power to towns with a population greater than 300. We disagree.
Section 11-52-70 authorizes "each municipal corporation in the State of Alabama" to exercise the zoning power. The legislature has not placed any limits on this grant of authority that would restrict a municipality from exercising that power because of its size. As this Court stated inIMED Corp. v. Systems Engineering Associates Corp.,602 So.2d 344, 346 (Ala. 1992), we are bound to interpret statutes as they are written:
 "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687 (Ala. 1991)."
Because § 11-52-70 explicitly grants zoning power to "each municipal corporation in the State of Alabama," this Court is required to recognize every municipality's authority to enact zoning regulations, and we cannot adopt a rule limiting the scope of the statute to only those municipalities with populations greater than 300, as the Peebles group urges us to do.[5]
 V.
The Peebles group next argues that the 2005 ordinance is not valid because, they claim, the Town officers violated existing Alabama law when they voted to enact the ordinance. The Peebles group asserts that the Town officers are all owners of developed property in Mooresville and that the 2005 ordinance financially benefits them in that it prevents the owners of the now restricted undeveloped land, such as the members of the Peebles group, from developing it so as to compete with the developed land owned by the Town officers. *Page 395 
The Peebles group also alleges that one member of the Town Council who voted to enact the 2005 ordinance had expressed an interest in buying some of the land that was restricted by that ordinance and that the mayor, who also voted to enact the 2005 ordinance, was a realestate agent who sells developed properties that would be in competition with the properties of the Peebles group, if those properties could be developed without the restrictions imposed by the 2005 ordinance. For all these reasons, the Peebles group argues, the Town officers violated the following three statutes when they voted to enact the 2005 ordinance: 1) § 11-43-54, Ala. Code 1975 ("No councilman shall be entitled to vote on any question in which he, his employer or employee has a special financial interest at the time of voting or was so interested at the time of his election."); 2) § 36-25-5(a), Ala. Code 1975 ("No public official or public employee shall use or cause to be used his or her official position or office to obtain personal gain for himself or herself, or family member of the public employee or family member of the public official, or any business with which the person is associated unless the use and gain are otherwise specifically authorized by law."); and 3) § 36-25-9(c), Ala. Code 1975 ("No member of any county or municipal agency, board, or commission shall vote or participate in any matter in which the member or family member of the member has any financial gain or interest."). The Town officers deny that their votes in favor of the 2005 ordinance violated these three statutes, and they cite opinions of this Court and advisory opinions of the attorney general and the State Ethics Commission that support their position.
However, it is unnecessary for this Court to consider whether in fact the Town officers violated the three statutes identified by the Peebles group because we have already stated that, as a general principle, this Court will not inquire into the motives of legislators when those legislators are taking legislative action. As we stated in Ex parte Finley,246 Ala. 218, 220, 20 So.2d 98, 100 (1944):
 "The general rule, and controlling here, is that the courts will not institute an inquiry into the motives of the legislative department in determining the validity of ordinances enacted by them for local improvements. Cram[p]ton v. City of Montgomery, 171 Ala. 478, 482, 55 So. 122
[(1911)]; 32 A.L.R. 1524; 37 Am. Jur. p. 821, § 182. This is because, in making such law, the municipal council is exercising a legislative function and its authorized legislative acts are not subject to impeachment because of bad faith or improper motives. Cram[p]ton case, supra; A[bl]es v. Southern Ry. Co., 164 Ala. 356, 365, 51 So. 327
[(1909)]; Clements v. Commission of City of Birmingham, 215 Ala. 59, 61, 109 So. 158
[(1926)]; Talladega v. Jackson-Tinney Lumber Co., 209 Ala. 106, 110, 95 So. 455 [(1923)]."
Thus, even if the Town officers did cast their votes in favor of the 2005 ordinance for improper reasons, this Court will neither seek to make that determination nor invalidate the ordinance because the motives of the Town officers were improper.
Moreover, the statutes the Town officers are accused of violating provide their own remedies, and none of those remedies include the invalidation of the ordinances that are improperly voted on. Section 11-43-54 provides that council members who vote on a question in which they have a special financial interest "may be removed" from their office, but the statute does not state that an ordinance that was enacted as a result of such a vote is void or otherwise invalid. Similarly, public officials *Page 396 
who violate §§ 36-25-5 and 36-25-9, part of the State Ethics Act, are subject to the penalties enumerated in § 36-25-27, Ala. Code 1975; however, there is no provision that would invalidate a local ordinance the official voted on in violation of those statutes. As a Pennsylvania court stated when considering similar circumstances and statutes, "the [Pennsylvania] Ethics Act does not authorize a court to void the public official's vote as one of the enumerated punishments for violating the conflict of interest provision." Yaracsv. Summit Acad., 845 A.2d 203, 209 n. 6 (Pa.Commw.Ct. 2004).
Accordingly, the Peebles group's argument is without merit, and the judgment entered by the trial court should not be reversed on this basis.[6]
 VI.
We next consider the Peebles group's argument that the Town Council improperly used a "zoning commission" to make zoning recommendations instead of a "municipal planning commission." The use of zoning commissions is authorized by § 11-52-79, Ala. Code 1975, which provides:
 "In availing itself of the powers conferred by this article, the legislative body of any incorporated city or town may appoint a commission, to be known as the zoning commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold a public hearing thereon before submitting its final report. In case of the appointment of such zoning commission, the municipal legislative body shall not hold its public hearings or take action until it has received the final report of such commission. Where a municipal planning commission already exists, it may be appointed as the `zoning commission.'"
Municipal planning commissions are authorized by § 11-52-2(a), Ala. Code 1975, which provides:
 "Any municipality is hereby authorized and empowered to make, adopt, amend, extend, add to, or carry out a municipal plan as provided in this article and to create by ordinance a planning commission with the powers and duties herein set forth."
Section 11-52-7, Ala. Code 1975, describes the powers given to a municipal planning commission as follows:
 "The commission shall have all powers heretofore granted by law to the zoning commission of the municipality and, from and after the creation of a planning commission in such municipality, all powers and records of the zoning commission shall be transferred to the planning commission; provided, that, in the event that the existing zoning commission shall be nearing the completion of its zoning plan, the council may, by resolution, *Page 397 
postpone the said transfer of the zoning commission's powers until the completion of such zoning plan, but such postponement shall not exceed a period of six months."
The Peebles group argues that the plain meaning of these statutes, when read together, is that all zoning powers previously vested in zoning commissions are now vested in municipal planning commissions. The Peebles group further argues that it would be impossible for a proper municipal planning commission to be organized in Mooresville because, pursuant to § 11-52-3, Ala. Code 1975, such commissions must have nine members (as opposed to a zoning commission, which has only three members) and, the Peebles group alleges, there are not nine citizens in Mooresville who have no conflict of interest and who could serve on a municipal planning commission.
The Peebles group's argument is without merit. Under § 11-52-76, Ala. Code 1975, the zoning power delegated to every municipality ultimately rests with the legislative body of that municipality, i.e., the city or town council — not the zoning commission or the municipal planning commission.See § 11-52-76, Ala. Code 1975 ("The legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed and may adopt such ordinances as may be necessary to carry into effect and make effective the provisions of this article."). A municipality is required to organize neither a zoning commission nor a municipal planning commission before enacting a comprehensive zoning ordinance. Both such commissions are optional and, even if created, are strictly advisory. See, e.g., Rose v. City of Andalusia, 249 Ala. 333, 335,31 So.2d 66, 66 (1947) ("It is not mandatory that a zoning commission be appointed, although such a commission may be designated. . . ."); and City of Mobile v. Karagan,476 So.2d 60, 62-63 (Ala. 1985) ("[T]he City [of Mobile], within the context of the zoning ordinance and within the limits imposed by the Code, has the ultimate authority to rezone, and the Planning Commission, in consideration of a rezoning amendment, is an advisory body only. The Planning Commission can recommend to the City what it thinks should be done, but it cannot pass finally on an application to rezone. The City is not bound by a recommendation of the Planning Commission.").
Moreover, although a municipality "may" appoint a zoning commission pursuant to § 11-52-79 and is "authorized and empowered" to create a municipal planning commission by § 11-52-2, there is no statutory requirement that a municipality electing to set up a commission must choose one or the other. The legislature has made both options available to municipalities, and this Court has no basis to interfere in the decision of a municipality in that respect.
 VII.
The Peebles group next argues that the Town defendants have an obligation to pay damages, costs, and expenses to the Peebles group for enacting the 2003 ordinance without giving proper notice, after this Court had struck down the 1991 ordinance inEx parte Bedingfield for that very same reason. The fact that the Town officers willfully enacted the 2003 ordinance knowing that its enactment did not comply with the statutory notice requirement specifically identified by this Court in Ex parte Bedingfield is evidence, the Peebles group argues, that their actions cannot be considered *Page 398 
"legitimate" legislative activity entitled to immunity.
The Town defendants argue that the Town officers are entitled to absolute legislative immunity in conjunction with their actions in enacting local legislation — even if their motives were improper — and that the Peebles group accordingly has no claim for damages. We agree. In TutwilerDrug Co. v. City of Birmingham, 418 So.2d 102, 104-05
(Ala. 1982), this Court stated:
 "[T]he tort liability rule for public officials and employees of Restatement (Second) of Torts, § 895D, Public Officers (1974), is consistent with Alabama's case law development in the area of `substantive immunity.' That section of the Restatement provides:
 "`. . . .
 "`(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.'"
(Emphasis added.) This legislative immunity is well established and universal in nearly every state. See, e.g., Bogan v.Scott-Harris, 523 U.S. 44, 46, 118 S.Ct. 966,140 L.Ed.2d 79 (1998) ("It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities.").
Moreover, it is well settled that the consideration and enactment of zoning ordinances is a legislative function. See, e.g., Waters v. City of Birmingham, 282 Ala. 104,107-08, 209 So.2d 388, 391 (1968) ("A city governing body in considering a zoning ordinance, as in [the] case of any other ordinance, acts in a legislative capacity."); and Corn v.City of Lauderdale Lakes, 997 F.2d 1369, 1392 (11th Cir. 1993) ("[A]ctions taken in connection with promulgating zoning ordinances and classifications, even the decision about which zoning classification should be applied to a specific parcel of land, are legislative actions for which local legislators are absolutely immune."). Accordingly, we agree that the Town defendants are not liable for any damages in association with the passage of the 2003 ordinance and that the trial court did not err by taxing the costs of this action to the Peebles group. This is true regardless of whether the motives of the individual Town officers were impure. Ellisv. Coffee County Bd. of Registrars, 981 F.2d 1185, 1191
(11th Cir. 1993) ("Even if [the plaintiffs] could prove conspiracy or bad faith by the commissioners, an unworthy purpose does not remove absolute immunity protection from legislators acting in their legislative capacity.").
 VIII.
The Peebles group has failed to establish the existence of a genuine issue of material fact as to whether the enactment of the 2005 ordinance was improper. The Peebles group has likewise failed to establish that any of the trial court's rulings on other issues constituted reversible error. For these reasons, the judgment in favor of the Town defendants is affirmed.
AFFIRMED.
COBB, C.J., and SEE, LYONS, WOODALL, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] As discussed later in the opinion, the trial court, before it entered the summary judgment, had dismissed the Town Council as a defendant; the individual members of the Town Council remained as defendants.
[2] The Town defendants subsequently removed the case to the United States District Court for the Northern District of Alabama; the Peebles group then voluntarily withdrew its federal constitutional claims so the case would be remanded to the Limestone Circuit Court.
[3] Given the position of the Town defendants on appeal, and because any error in the timing of the hearing was harmless for the reasons discussed below, we need not determine whether the trial court erred in permitting a reply brief to be filed less than 10 days before the hearing.
[4] The Peebles group has failed to comply with Rule 28(a)(10), Ala. R.App. P., which requires an appellant to state its contentions with respect to the issues presented in its brief and the reasons therefor, with citations to authority supporting the arguments.
[5] Pursuant to the principle that statutes dealing with the same subject should be read in pari materia, statutes should be construed together so as to harmonize them as much as practical, and, in the event of a conflict, a specific statute relating to a specific subject will prevail over a general statute relating to a broad subject. Ex parte Jones Mfg.Co., 589 So.2d 208, 211 (Ala. 1991). We see no conflict between § 11-41-1 and § 11-52-70; however, even if a conflict did exist, § 11-52-70, which by its terms applies to all municipalities and specifically relates to zoning, would prevail.
[6] We further note that although the Peebles group has citedJefferson County v. City of Birmingham, 256 Ala. 436,55 So.2d 196 (1951), for the proposition that "a municipality may enact a zoning ordinance provided it can do so without violating other state law or federal or state constitution," that argument is an inaccurate characterization of our statement in Jefferson County. (Peebles group's brief, p. 34.) In fact, this Court stated in Jefferson County
that "[t]he only limitation placed upon the power of municipalities to pass zoning ordinances is that such ordinances must be comprehensive in scope and purpose and not in conflict with the laws of the state or the state and federal constitutions." Jefferson County, 256 Ala. at 440,55 So.2d at 199. Thus, it is the ordinance itself that must not conflict with preexisting law, not the procedure by which the ordinance is enacted. *Page 399